TACOMA PROMENADE, a California limited partnership; Tacoma Investors, a California limited partnership; Taw Development Corporation, a California corporation, Plaintiffs—Appellants,

v.

CITY OF TACOMA, a municipal corporation, Defendant—Appellee.

No. 01–35143.

D.C. No. CV–99–05546–FDB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 2002.

Decided Aug. 20, 2002.

Before NOONAN, HAWKINS and GOULD, Circuit Judges.

MEMORANDUM*

Tacoma Promenade ("Promenade") appeals the district court's grant of summary judgment for the City of Tacoma ("City") on Promenade's breach of contract claim. We have jurisdiction over this timely appeal. We affirm substantially for the reasons stated by the district court.

Promenade's predecessor, Schurgin Development Companies ("SDC"), contracted with the City in October 1988 to purchase and develop about 80 acres of property, known as the Wapato Hills Property. A 1989 rezoning of the property would have permitted development of an apartment complex and a shopping center. The apartment plans were dropped and SDC proceeded with the planned shopping center development. Although a site plan was approved and the date for closing the land purchase contract was extended a few times, in May 1994 the City declared a default because the planned purchase price was not paid. The City then proceeded with other plans. Suit was filed by Promenade as SDC's successor on October 20, 1999, alleging breach of contract, breach of implied covenant of good faith and fair dealing, and entitlement to specific performance.

■ Promenade argues that the City breached the contract when the City did not obtain the wetlands permits necessary for development of the property, and urges that the City had implicitly covenanted to make all its contract representations true, which in Promenade's view required that a wetlands permit be obtained for the property before closing. But we agree with the district court that nothing in the contract obligated the City to obtain the wetlands permits. The contract gave purchaser the right to prosecute in the City's name, at purchaser's cost and expense, "such zoning, bulk, density, usage, fill, grading, and other amendments, variances, resolutions and permits with respect to the Property as Purchaser, in its discretion deems appropriate with respect to its intended development of the Property." Although the City had an obligation to cooperate with the purchaser on such matters if the City's costs and expenses were reimbursed, the contract language, with no ambiguity, makes clear that the developer was intended to obtain whatever permits were needed for its planned development.

In the context of this agreement, we reject Promenade's argument that it as purchaser had a right, but no obligation, to gain necessary permits. It may be that Promenade was not obligated to get permits, but failing to do so, it has no contractual basis to blame the City if it could not complete its planned development. The contract terms on this point do not appear unusual. A seller cannot normally know enough of the details of a planned development and the cost or feasibility of any accommodations or changes made to gain regulatory approval, to effectively control such matters.

■ Also, no genuine issue of material fact exists as to whether the City breached any other duties under the contract. The district court expressly found that there was no breach of the implied covenant of good faith, and we agree. Under Washington law, if there is no breach of a specific term in the contract, there is no breach of the covenant of good faith and fair dealing. See *Badgett v. Sec. State Bank*, 116 Wash.2d 563, 570, 807 P.2d 356 (1991) ("As a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

require performance of a contract according to its terms.") In this connection, the district court considered and rejected Promenade's arguments that certain representations in the contract were not true at the time of closing, thereby relieving the asserted default. We agree that these representations were not rendered false by the existence of wetlands.

In Paragraph (f), ("Violations"), the City represented that it was aware of no conditions on the property, including hazardous waste, that would affect usability. With a permit, the wetlands would not have precluded development, even were we to conclude that a wetland is within the type of conditions described.

■ In Paragraph (p), ("Litigation"), the City represented that there were no administrative proceedings or government investigations occurring or threatened against the property, which was true when the agreement was entered and through anticipated closing. We agree with the district court that a delineation of wetlands to determine if a permit is needed is not properly considered a threatened litigation, government investigation, or administrative proceeding in the sense described by the paragraph. We think it was obvious that regulatory oversight of various types would go hand in hand with a multi-acre shopping center development.

■ In Paragraph (i), ("Non–Contravention of Law or Existing Documents"), the City represented that completing the contemplated contractual sale would not conflict with any ordinance to which the property was subject. Transfer of the property would not offend any law or ordinance when the agreement was entered into, through anticipated closing. And even if the transaction contemplated included the shopping center development by purchaser, it could have proceeded consistent with law if the purchaser had obtained all necessary permits.

■ In Paragraph (q), ("Hazardous Substances"), the City represented that environmental conditions on the property didn't violate laws and that there were no conditions that might affect the property's use and support a claim under environmental regulatory requirements. A wetland is not a hazardous or toxic substance. Moreover, even assuming wetlands are "environmental conditions" within the meaning of paragraph (q), the record does not show that property conditions violated laws materially. Further, the record does not show that wetlands on the property would affect its use so long as Promenade had undertaken to obtain permits necessary to proceed with development. And it was the purchaser's obligation to obtain permits necessary to proceed with development.

■ In Paragraph (m), ("Assumption of Liabilities"), the City represented that it would take responsibility for liabilities arising from its possession, ownership, or use of the property before closing. We reject Promenade's argument that the City should have paid for costs of delineation of wetlands or to cover liabilities from wetland degradation. As to delineation, it was not a liability of the property, but a necessary step for the developer's permitting activities; the contract clearly states that the permitting process is at purchaser's "sole cost and expense." As for asserted degradation, the City disputed that wetlands were materially degraded, and no liability was shown. The City did not repudiate an obligation to pay for any liabilities that were established.

■ Moreover, even if we assumed that some of the above representations were not true as of the closing date, these representations were not covenants or promises,

and at most Promenade or its predecessor SDC might have asserted a claim for recision and return of earnest money. *Johnson v. Brado*, 56 Wash.App. 163, 165, 783 P.2d 92 (1989). The suit filed by Promenade did not seek recision, but rather sued on the contract for damages and specific performance.

 At argument, Promenade contended that the City should also be liable because the City represented that the property would be exempt from the wetlands permitting requirements, and by the time the City told Promenade that wetlands permits would be necessary, there was not enough time for Promenade to obtain them before the closing date. This precise argument was not made in Promenade's opening brief, or even its reply brief. Ordinarily, we do not consider issues raised for the first time at oral argument. *See Montana Pole & Treating Plant v. I.F. Laucks and Co.*, 993 F.2d 676, 679 (9th Cir.1993). We consider Promenade to have waived this issue.[1]

Considering the purchase agreement as a whole and viewing the contract provisions in context, the contract terms cannot reasonably be interpreted as a matter of law to impose a requirement that the city obtain the wetlands permit for the developer. *See Berg v. Hudesman*, 115 Wash.2d 657, 667, 672, 801 P.2d 222 (1990); *see also DP Aviation v. Smiths Indus. Aero. & Def. Sys.*, 268 F.3d 829, 837 (9th Cir.2001) (applying Washington contract law and *Berg*).[2]

**AFFIRMED.**

---

1. If we were to reach this issue, we would in any event reject Promenade's argument on the merits. Evidence in the record does not show that responsible city officials represented there were grandfather rights or other exemptions for wetlands on the project as it stood before closing. The record indicates that any grandfather rights Promenade might have had were at best based on the original site plan approval, which had expired. Also, there was no evidence that Promenade even began to apply for permits in the four months before the closing date. The City had no obligation under these circumstances to extend the closing date for a fifth time.

2. Finally, Promenade also appeals the denial of its motion to disqualify the City's counsel. The district court did not abuse its discretion in ruling that the matters for which counsel represented Promenade were not substantially related to its representation of the City in the present case, and in ruling that therefore counsel had not violated Washington Professional Rule of Conduct 1.9(a).